[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On plaintiff's motion for a deficiency judgment, the primary issue is the value of the property foreclosed upon on the date title vested in plaintiff on November 5, 1992.
The judgment debt was found by the court entering the judgment of strict foreclosure to be $510,472.14, and interest of $28,976.20 accrued from that date to the date title vested in plaintiff, making the judgment debt plus interest to be $539,448.34.
The subject property consists of six unimproved residential lots in a subdivision known as Sterling Woods on Canfield Way in Avon, Connecticut. The layout of the lots has been approved, but the lots have not been approved by the town until final topping of asphalt on the road. The cost of the work is approximately $3,500, secured by a $25,000 sub-division bond. The lots vary in size from .35 to 3.11 acres, the average size being 1.18 acres. The topography of the three smallest lots is level, two of the lots on a cul-de-sac are above grade, and the largest lot (3.11 acres) is below grade and fronts on a small pond. An CT Page 9128 overhead HELCO easement crosses the rear portion of two lots.
Clearly the highest and best use of the property is their present one as residential building lots.
Both plaintiff's and defendant's appraisers determined value based on the sales comparison approach. They differed as to estimated gross sales price of the lots, the length of time for them to be sold, the most likely purchaser, and the deductions to be taken in arriving at fair market value.
Plaintiffs' appraiser determined value on the basis of a bulk sale of all the lots to a single purchaser-developer. Such a purchase he estimated would likely take place in two years and all the lots would likely be sold within three years. Plaintiff's appraiser projected an aggregated sales price for all the lots of $607,549, rounded to $610,000, From that figure he substracted [subtracted] his estimate of the cost to complete the road (at $11,500), sales commissions, overhead, conveyance taxes, real estate taxes, advertising, insurance, investor's profit (at 12%), and professional fees, constituting developmental expenses, to be $172,181, making net income from sales $435,366. He discounted that figure to a present value of 18% per annum to represent the value to a single purchaser of $320,000. Estimating the holding period to be two years, he applied a further discount rate of 10% and arrived at a final value via the sales comparison approach, as of November 5, 1992, to be $265,000.
However, since the property was actually sold by the plaintiff to a single purchaser within nine months, he revised his appraisal to $299,000.
The defendant's appraiser diminished the significance of the road not being completed (because of its minor cost of $3,500) and determined the highest value could be realized by selling the lots at retail to individual home owners. He estimated the aggregate sales price of all the lots to be $709,000 and after deducting for commissions, insurance, real estate taxes, conveyance taxes, legal expenses and cost of road completion (at $6,500), calculated the net market value at retail to be $644,315. CT Page 9129 He also determined the net market value at wholesale to a single purchaser wanting a 10% profit to be $575,340.
The court considered these further facts established by the evidence. Fifty lot sales occurred in Avon in 1992, representing a 45% increase over 1991. In 1992 of thirty-three lot sales examined, the average price per acre was $66,186 and the average price per sale was $125,313.
This court finds that, as of November 1992, the most reasonable basis for determining fair market value of the property was by retail sales to individual buyers and that the six lots could most likely be sold within two years. The court takes the plaintiff appraiser's gross sales price of $610,000, and subtracts from it plaintiff appraiser's expenses (except for cost of road completion) as follows:
 Cost of road completion $ 6,500 Sales commission (at 6%) 36,453 Conveyance Taxes 3,706 Real Estate Taxes 9,582 Advertising 6,500 Insurance 5,750 Professional fees 2,000 ----- $ 70,491
Net Sales Price $539,509
Since it would take two years to realize the $539,509, the court further discounts it at 10% per annum to obtain its present value of $446,714, rounded to $447,000. The court thus concludes the fair market value of the property is $447,000.
The court further awards plaintiff a counsel fee of $4,000 and an appraiser's fee of $2,500.
The plaintiff's counsel is directed to calculate the deficiency in accordance with this opinion, obtain the concurrence of defendant's counsel and submit the calculation to this court for entry of the deficiency judgment. If concurrence is not obtained, the court will set the matter down for further hearing. CT Page 9130
Robert Satter State Trial Referee